## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY WHITE,** | : | **CIVIL ACTION NO. 1:07-CV-0951** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PROBATION OFFICE,** | : | |
| **CUMBERLAND TOWNSHIP POLICE** | : | |
| **DEPT., ADAMS CO. DISTRICT** | : | |
| **ATTORNEY OFFICE, NATHAN** | : | |
| **FAZENBAKER, ALAN SHIPLEY,** | : | |
| **TIM GUISE, and CHAD SPRANKLE,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

_____This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by *pro se*

plaintiff Anthony White ("White"), who advances claims for malicious prosecution,

unlawful arrest and imprisonment, and unlawful search and seizure.  Defendants

have filed two motions to dismiss (Docs. 20, 23) asserting that White's claims

collaterally challenge a criminal conviction for drug and firearm offenses and are

therefore precluded by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  In the alternative,

defendants Adams County Adult Probation Department (the "Probation Office")[1]

and Cumberland Township Police Department ("CTPD") allege that the complaint

fails to plead facts supporting White's municipal liability claims, and defendant

Police Officer Tim Guise ("Guise") contends that he is entitled to qualified

_____

[1]The complaint identifies defendant Adams County Adult Probation
Department as "Probation Office."

immunity.  For the reasons that follow, the motions will be granted in part and denied in part.

## I.   **Statement of Facts**[2]

White's complaint contains only minimal factual allegations describing the circumstances surrounding his claim in the instant matter.  On March 15, 2006, defendant Probation Office, presumably acting through defendant probation officers Nathan Fazenbaker, Chad Sprankle, and Alan Shipley (collectively "defendant probation officers"), performed a warrantless search of White's vacant room and discovered unspecified contraband articles.  (Doc. 1 ¶ IV.1.)  Soon thereafter, defendant Guise received notification of the contraband articles, apparently from defendant probation officers.  (Id. ¶ IV.2.)  Guise performed two additional searches of the room:  one without a warrant and one after obtaining a warrant.  (Id.)  The complaint does not allege whether Guise discovered additional contraband during these searches; however, White was eventually charged based on the items discovered during the searches.  (Id. ¶¶ IV.2-.3.)  The precise nature of these charges is not specified in the complaint.

Despite these sparse allegations, White has attached a police report of the incident to his materials in opposition to the motions to dismiss.  (See Doc. 26

---

[2]In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

at 4-6.)  For purposes of clarity, the court will recount the contents of the police

report to the extent that it is consistent with the allegations in White's complaint.[3]

On March 15, 2006, Guise and defendant probation officers were dispatched

to the Western Inn in Gettysburg, Pennsylvania, where White had rented Room No.

4. (Id. at 4.)  Guise, accompanied by probation officers, entered Room No. 4 in

search of White but found it vacant.  (Id.; Doc. 1 ¶ IV.1.)  Guise spoke with a witness

while probation officers searched the surrounding area for White.  Alan Shipley

("Shipley")[4] and other unidentified probation officers located White nearby and

arrested him after a brief pursuit.  (Doc. 26 at 4.)  A search of his person produced a

hand scale, and officers discovered a discarded plastic bag containing cocaine base

along his flight path.[5]  (Id.)

 Probation officers then initiated a warrantless search of Room No. 4, which

yielded a small bag of marijuana.  (Doc. 1 ¶ IV.2; Doc. 26 at 5; Doc. 64 at 8 in No.

---

[3]The court may consider documents of record and exhibits submitted by the parties when evaluating a motion to dismiss.  See Tilbury v. Aames Home Loan, 199 F. App'x 122, 125 (3d Cir. 2006) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994)) (observing that a court may consider exhibits submitted by the parties when ruling on a motion to dismiss).

[4]Shipley is the only probation officer whose role in the arrest is expressly described in the police report.

[5]The police report states that officers also retrieved a key to Room No. 4 from White's person.  (Doc. 26 at 4.)  White disputes this, and his memoranda in opposition to defendants' motions assert that officers received a room key from the hotel's manager.  (Doc. 22 at 1; Doc. 34 at 3.)

1:06-CR-0266 (M.D. Pa) [hereinafter "No. 06-CR-0266"]).[6]  Officers suspended the

search and contacted Guise, who entered and secured the room before requesting a

search warrant.  (Doc. 1 ¶ IV.2; Doc. 26 at 5.)  The search resumed after Guise

obtained a warrant, and officers discovered a loaded firearm in close proximity to

the bag of marijuana.  (Doc. 1 ¶ IV.2; Doc. 26 at 5; Doc. 64 at 3 in No. 06-CR-0266)

Police also searched an automobile driven by defendant and discovered

approximately thirty grams of cocaine base.  (Doc. 26 at 5; Doc. 64 at 8 in

No. 06-CR-0266.)

On April 4, 2006, White was arraigned on various drug and firearm charges in

state court.  (Doc. 1 ¶ IV.3; see also Docket, Commonwealth v. White,

No. CR-0000094-06 (Pa. Magis. Dist. Ct. 51-3-04)).[7]  Defendant Adams County

District Attorney's Office ("the District Attorney's Office") handled the state court

proceedings.  (Doc. 1 ¶ IV.3.)  A federal grand jury indicted White for similar

offenses on August 2, 2006, and the state charges were dropped in favor of federal

prosecution.  (See Docs. 1, 28 in 06-CR-0266; Docket at 6, Commonwealth v. White,

---

[6]White's criminal proceedings before this court are docketed at Criminal No. 1:06-CR-0266.  The court takes judicial notice of this docket for purposes of pending motions.  See FED. R. EVID. 201(c); Cooper v. Pa. State Att'y Gen., No. 2:06cv1332, 2007 WL 2492726, at *2 (W.D. Pa. Aug. 30, 2007) (reiterating that a federal court may take judicial notice of court records and dockets).

[7]Dockets associated with White's state court proceedings are publically available on the website of the Pennsylvania courts at http://usjportal.pacourts.us.  These dockets are No. CR-0000095-06 before Magisterial District Court No. 51-3-04 and No. CP-01-CR-0000416-2006 before the Adams County Court of Common Pleas.  The court takes judicial notices of state court dockets associated with White's criminal proceedings for purposes of this memorandum.  See supra note 6.

No. CP-01-CR-0000416-2006 (Pa. Ct. Com. Pl. Adams County)).  Senior United

States District Judge Sylvia H. Rambo presided over a bench trial on July 10-11,

2007, at which White was convicted on five counts of drug, firearm, and

immigration crimes.[8]  (Doc. 64 at 4-10 in No. 06-CR-0266.)

White commenced the instant action May 24, 2007, alleging that defendants'

conduct on March 15, 2006 violated his Fourth Amendment right to be free of

unlawful arrest, unlawful imprisonment and unlawful searches and seizures.  He

also contends that the filing of state charges constitutes malicious prosecution.

Defendants have filed two motions to dismiss the complaint, both of which assert

that White's criminal conviction bars his civil rights action.  Guise asserts that he

possesses qualified immunity from suit, and CTPD and the Probation Office allege

that White has failed to plead facts supporting municipal liability.  The parties have

fully briefed these issues, which are now ripe for disposition.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all factual allegations in the complaint and all reasonable

inferences that can be drawn therefrom, and view them in the light most favorable

---

[8]White was found to be an illegal alien and national of Jamaica and was convicted for possession of firearms by an illegal alien.  (Doc. 64 at 10-11 in No. 06-CR-0266.)

to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting

<u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally

limited in its review to the facts in the complaint, it "may also consider matters of

public record, orders, exhibits attached to the complaint and items appearing in the

record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380,

1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d

1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." <u>Sershen v.

Cholish</u>, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting

<u>Erickson v. Pardus</u>, --- U.S. ---, 127 S.Ct. 2197, 2200 (2007)).  The plaintiff must

present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> FED. R. CIV. P.

8(a) (stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, ---

U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to

"raise a right to relief above the speculative level"); <u>Victaulic Co. v. Tieman</u>, 499

F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure

to state a claim if it "contain[s] either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under some viable legal

theory." <u>Montville Twp. v. Woodmont Builders LLC</u>, No. 05-4888, 2007 WL 2261567,

at *2 (3d Cir. 2007) (quoting <u>Twombly</u>, --- U.S. at ---, 127 S. Ct. at 1969).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

6

their claims before dismissing a complaint that is merely deficient.  <u>See</u> <u>Grayson v.</u>

<u>Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d

113, 116-17 (3d Cir. 2000).

## III.   <u>Discussion</u>

White advances claims for malicious prosecution, unlawful arrest and

imprisonment, and unlawful search and seizure.  Defendants assert that his

criminal conviction bars these claims.  Alternatively, CTPD and the Probation

Office asserts that White has failed to plead facts sufficient to sustain municipal

liability, and Guise argues that he is entitled to qualified immunity from suit.

### A.   <u>Preclusion by Virtue of White's Criminal Conviction</u>

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court announced the

"favorable-termination rule," which forecloses certain § 1983 actions for plaintiffs

who have been convicted of criminal charges.  In <u>Heck</u>, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus . . . .
> A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under
> § 1983.

Id. at 486-87; see also Hunt v. City of Scranton, Nos. 06-4381, 06-4975, 2007 WL 1624099, *2-3 (3d Cir. June 6, 2007).  The court will therefore evaluate each of White's claims to determine whether the favorable termination rule forecloses them.

### 1.   **Malicious Prosecution**

Under the favorable termination rule, a civil rights plaintiff cannot maintain a claim for malicious prosecution predicated upon a charge for which the plaintiff has pled guilty because "an award of damages [for malicious prosecution] would necessarily imply that . . . [the] conviction and sentence were unlawful." Marable v. W. Pottsgrove Twp., 176 F. App'x 275, 281 (3d Cir. 2006); see also Kadonsky v. New Jersey, 188 F. App'x 81, 85 (3d Cir. 2006).  In the instant matter, White contends that defendants engaged in malicious prosecution by tampering with and misrepresenting evidence.[9]  (Doc. 22 at 1.)  He also contends that the dismissal of state charges in favor of the federal indictment demonstrates malicious prosecution by defendants, all of whom are state officials.  (Doc. 1 ¶¶ V.1-.2; Doc. 26 at 1-2.)  Although White's criminal proceedings were handled by federal prosecutors, Heck

---

[9]White alleges that no hand scale was presented at his trial despite Guise's statement that such a device was seized from White's person during his arrest. (Doc. 22 at 1.)  White also contends that defendants misrepresented evidence by incorrectly stating that a key to Room No. 4 was found on his person.  (Id.)  Lastly, he attempts to discount the validity of officers' testimony that he discarded a small plastic bag of cocaine base on the basis that defendants produced no direct evidence from any witness who saw him discard the bag.  (Id.)  The court expresses no opinion about whether such allegations could establish a claim for malicious prosecution notwithstanding the preclusive effect of Heck.

bars claims against the state officials who participated in the criminal investigation because such claims would impugn the validity of the federal conviction that they produced.  See Shamaeizadeh v. Cunigan, 182 F.3d 391,  397 n.4 (6th Cir. 1999), abrogated on other grounds by Wallace v. Kato, --- U.S. ----, 127 S. Ct. 1091 (2007), cited with approval in United States v. Bohn, Crim. No. 92-61-02, 1999 WL 1067866, at *4 n.1 (E.D. Pa. Nov. 9, 1999).  Permitting White to recover damages for alleged harm of malicious prosecution would necessarily imply the existence of a constitutional flaw in his conviction on federal charges, which are substantively identical to the state charges that they supplanted.  Accordingly, the motion to dismiss will be granted with respect to White's malicious prosecution claim.  Leave to amend will be denied as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## 2.    **Unlawful Arrest and Unlawful Imprisonment**

Heck's effect on unlawful arrest and unlawful imprisonment claims depends upon the unique facts of each arrest and their role in the underlying criminal case. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety Div. of State Police, 411 F.3d 427, 452 (3d Cir. 2005).  Heck precludes challenges to evidence discovered during an unlawful arrest if the evidence is essential to support the plaintiff's criminal conviction.  Id. The plaintiff may, however, challenge evidence resulting from an unlawful arrest if the plaintiff's conviction is based upon additional evidence extraneous to the alleged constitutional violation that is itself sufficient to support the conviction.  Id.; Hayhurst v. Upper Makefield Twp., No. Civ. A. 06-3114,

2007 WL 1795682, at *8 (E.D. Pa. June 20, 2007) (stating that <u>Heck</u> does not preclude a false arrest claim if the plaintiff's success would not "imply the invalidity of an underlying conviction").   <u>Heck</u> therefore permits a plaintiff to challenge evidence seized during an allegedly unlawful detention if the conviction can be supported by external evidence that derives from a source other than the detention.   <u>See</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (observing that some unlawful arrest claims may proceed despite a criminal conviction because "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop"); <u>see also</u> <u>Gibson</u>, 411 F.3d at 450 (holding that a false arrest claim may proceed notwithstanding <u>Heck</u> if other evidence sufficient to support the conviction would remain untarnished by the alleged civil rights violation); <u>Bansal v.</u> <u>Russ</u>, 513 F. Supp. 2d 264, 278 (E.D. Pa. 2007) (quoting <u>Apampa v. Layng</u>, 157 F.3d 1103, 1105 (7th Cir. 1998) ("[T]he 'fact that some evidence used in a trial is tainted by illegality does not necessarily undermine the conviction, given the presence of other evidence and the limitations of the exclusionary rule.'")).   In contrast, <u>Heck</u> forecloses unlawful arrest and imprisonment claims that attack the fundamental evidentiary grounds supporting a conviction.   <u>See</u> <u>Heck</u>, 512 U.S. at 487 n.7 ("[T]he § 1983 plaintiff must proof not only that the search was unlawful, but that it caused him actual, compensable injury, which . . . does *not* encompass the 'injury' of being convicted and imprisoned." (citation omission)); <u>Wells v. King</u>, 232 F. App'x 148, 149 (3d Cir. 2007) (upholding dismissal of the plaintiff's false imprisonment claim because he advanced it as a means of challenging "every aspect of [his] prosecution

and conviction—including his arrest and imprisonment"). Hence, a plaintiff falls squarely within the <u>Heck</u>'s preclusive reach if the plaintiff alleges that "the only evidence supporting the conviction is tainted by a possible constitutional violation." <u>Gibson</u>, 411 F.3d at 452 (applying <u>Heck</u> to a case in which a convicted plaintiff alleged that police officers wrongfully arrested him based upon evidence gathered in violation of his Fourth Amendment rights).

In the case *sub judice*, defendants arrested White and held him in custody pending the outcome of state charges, which were dropped after issuance of a federal indictment. Both the state and the federal charges relied upon the firearms and controlled substances that defendants discovered during the March 15, 2006 searches. Were White permitted to challenge the legality of his arrest and imprisonment by defendant state officials, his claim would inevitably impugn the validity of his federal conviction obtained on bases identical to those upon which defendant state officials detained and charged him. Such a challenge constitutes a quintessential example a prisoner's attempt to challenge the mere "injury of being convicted and imprisoned," which <u>Heck</u> precludes. <u>See</u> <u>Heck</u>, 512 U.S. at 487 n.7; <u>see also</u> <u>Wells</u>, 232 F. App'x at 149 (holding that <u>Heck</u> barred a plaintiff's unlawful arrest and false imprisonment claims because the alleged constitutional violations effectively challenged "every aspect" of the plaintiff's prosecution). Accordingly, <u>Heck</u> bars White's unlawful arrest and imprisonment claim, and the motions to dismiss it will be granted. Leave to amend will be denied as futile. <u>See</u> <u>Grayson</u>, 293 F.3d at 108.

3.    **Unlawful Search and Seizure**

Claims asserting unlawful search and seizure, like those asserting unlawful

arrest, may be foreclosed by Heck when they constitute a fundamental attack on

evidence essential to a criminal conviction.  Thus, a plaintiff will be precluded from

challenging the seizure of evidence if the plaintiff's criminal conviction would be

unsustainable absent the fruit of the seizure.  See Gibson, 411 F.3d at 452 (holding

that plaintiff's challenge to a search that yielded controlled substances was

impermissible under Heck because the "drugs were the only evidence supporting

the drug charges" against the plaintiff); James v. Superior Court of N.J. Bergen

County, No. Civ. A. 07-4683, 2007 WL 3071794, at * (D.N.J. Oct. 19, 2007) ("[C]ases in

which the only evidence supporting a conviction is tainted by a possible

constitutional violation are perhaps the quintessential example of when the Heck

deferred accrual rule is triggered." (internal quotation omitted)).  However, Heck

does not foreclose suits that attack a limited quantum of the evidence supporting

the plaintiff's conviction if the remaining non-challenged evidence is alone

sufficient to sustain the conviction.  Gibson, 411 F.3d at 450.

During the March 15, 2006 investigation, defendants performed three

separate searches of (1) White's flight path and of his person, (2) Room No. 4 at the

Western Inn, and (3) a vehicle in which White was known to have ridden.[10]  The first search produced a hand scale and a small bag of cocaine base, the second yielded a firearm and a bag of marijuana, and the third resulted in the discovery of an additional thirty grams of cocaine base.  White challenges the constitutionality of each of these searches.

The search of White's flight path and person produced a small bag of cocaine base and a hand scale.  However, the findings of fact and verdict issued in White's criminal case fail to mention either the cocaine base retrieved from his flight path or the hand scale.  Accordingly, White's challenge to this search does not threaten to impugn the validity of his criminal conviction, and Heck poses no bar to the claim challenging this search.

The search of White's room produce a firearm and approximately seventeen grams of marijuana, and the vehicle search yielded thirty grams of cocaine base.  Federal prosecutors introduced this evidence at White's criminal trial, and the court relied upon it when finding White guilty of possession of a firearm by a convicted felon, possession of a firearm in furtherance of a drug trafficking crime,

---

[10]White's complaint challenges only the search of Room No. 4.  (Doc. 1 ¶ IV.1-.2.)  However, White's briefs in opposition to the motions to dismiss suggest that he also challenges the searches of his person and the vehicle.  (See Doc. 22 at 1-2 (challenging the evidence seized from his person and from the vehicle as the products of illegal searches); Doc. 26 at 2 (same)).  The court will therefore address Heck's preclusive effect on each of the three searches.  See Williams v. United States, 238 F. App'x 867, 868 (3d Cir. 2007) (reiterating that pleadings must be construed in a manner that does substantial justice to the pleader's claims and that pro se filings must be construed liberally to that effect).

and distribution and possession with intent to distribute cocaine base and marijuana. Despite the court's reliance on this evidence, however, trial witnesses also testified that they saw White utilize a firearm in furtherance in drug trafficking and other illegal activities on at least three occasions distinct from the March 15, 2006 search. (Doc. 64 at 2, 4-5 in No. 1:06-CR-0266)). Others observed White or his agents engaging in the purchase and sale of marijuana and cocaine base on various occasions. (Id. at 6-10.) Several witnesses testified that they had purchased cocaine base from White, both directly and through others. (Id.) None of the testimony pertained to White's criminal activity associated with the automobile and vehicle searches. White's constitutional challenge has no effect on the veracity of the witnesses who provided this testimony. Heck has no effect on White's claims because sufficient evidence extraneous to the room and vehicle searches exists to support White's criminal conviction.[11] See Gibson, 411 F.3d at 450 (interpreting

---

[11]Although White's challenge has no effect on his *conviction*, the record presently lacks information sufficient to determine whether his challenge would impugn the duration of his *sentence*. See Cook v. City of Phila., 179 F. App'x 855, 857 (3d Cir. 2006) ("In Heck, the Supreme Court held that a litigant cannot proceed under § 1983 if success on his claim would necessarily imply the invalidity of the fact or duration of his conviction or sentence."). The opinion issued by our colleague, Senior District Judge Sylvia H. Rambo, in White's criminal case contains factual findings about the amount of drugs seized from the vehicle and from Room No. 4. (See Doc. 64 at 12-14 in No. 06-CR-0266.) However, the record as presently developed by the parties does not reflect whether the court relied upon these findings at White's sentencing or whether the drug amounts set forth in its opinion are essential to justify the duration of his sentence. In light of this evidentiary dearth, the court expresses no opinion about Heck's potential effect on the search and seizure claims to the extent that they produced evidence necessary to support White's sentence.

Montgomery, 159 F.3d at 126 n.5) (holding that Heck does not bar a plaintiff's

challenge to evidence presented at the plaintiff's criminal trial if the criminal

proceedings involved other evidence, such as witness testimony, sufficient to

support the plaintiff's conviction); Walker v. Wentz, No. 1:06-CV-2411, 2008 WL

450438, at *4 (M.D. Pa. Feb. 15, 2008) (observing that "Heck does not restrict civil

rights claims that have no collateral effect on the underlying criminal conviction,"

such as those for unlawful search and seizure).  Hence, while Heck precludes White

from advancing malicious prosecution, unlawful arrest, and unlawful imprisonment

claims, it has no effect on his ability to challenge the constitutionality of the

searches performed on March 15, 2006.

### B.   Liability under § 1983

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff

must show a deprivation of a "right secured by the Constitution and the laws of the

15

United States . . . by a person acting under color of state law."[12] Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants Cumberland Township Police Department and Adams County Adult Probation Department ("the Probation Office") move for dismissal on the ground that White has failed to allege a policy, practice, or custom that resulted in the alleged constitutional deprivations.  Guise also seeks dismissal, asserting that he is entitled to qualified immunity on the unlawful search and seizure claims against him.

###   1.   Municipal Liability

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).  Municipal liability also requires the plaintiff to demonstrate that "'there

---

[12] Defendants apparently concede for purposes of the instant motion that they were acting "under color of state law" at all times relevant hereto.

is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Here, White has failed to allege any policy, practice, or custom instituted by CTPD or the Probation Office to support asserted constitutional harm.[13] He avers merely that Guise, Fazenbaker, Shipley, and Sprankle searched Room No. 4 in violation of his Fourth Amendment rights. (Doc. 1 ¶¶ IV.1-.2.) The complaint does not identify any official policy or custom of CTPD or the Probation Office that led to these deprivations. Indeed, neither the complaint nor White's briefs in opposition contain any allegation of conduct by CTPD or Probation Office policymakers that resulted in the alleged constitutional violations. Accordingly, CTPD and the Probation Office's motions to dismiss will be granted, and White will be permitted

---

[13]The Adams County District Attorney's Office also seeks dismissal for failure to allege a policy, practice, or custom that resulted in a deprivation of White's constitutional rights. White's complaint originally named Assistant District Attorney Brian Sinnett as a defendant herein. (See Doc. 1 ¶ III.B.) White voluntarily dismissed Sinnett from this action on February 22, 2008, acknowledging that he possesses absolute prosecutorial immunity. (See Doc. 36.) The Adams County District Attorney's Office was not included in the dismissal. White has not alleged that any of the remaining defendants—all of whom are employees of either CTPD or the Probation Office—acted under the auspices of the District Attorney's authority. White cannot maintain a claim against the District Attorney's office absent an act or omission performed on its behalf. See Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (observing that dismissal of all constitutional claims allegedly committed by an agent of a municipality requires dismissal of municipal liability claims because no constitutional harm exists upon which recovery can be predicated). The claims against the District Attorney's office will therefore be dismissed, and leave to amend will be denied as futile. See Grayson, 293 F.3d at 108.

to file an amended complaint that alleges a policy or custom maintained by CTPD

or the Probation Office that resulted in the asserted constitutional harm.[14]

## 2. **Qualified Immunity**

The doctrine of qualified immunity provides that government officials

performing "discretionary functions," are shielded from suit if their conduct did not

violate a "clearly established statutory or constitutional right[ ] of which a

reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999);

Saucier v. Katz, 533 U.S. 194, 200-01 (2001). This doctrine provides not only a

defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227

(1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To gain the protection of the

doctrine, the defendant must show either that: (1) the plaintiff has not

demonstrated "a deprivation of an actual constitutional right," or (2) the right at

issue was not "clearly established at the time of the alleged violation." Conn v.

Gabbert, 526 U.S. 286, 290 (1999); see also Doe v. Groody, 361 F.3d 232, 237-38 (3d

---

[14]Guise also moves to dismiss the official capacity claims because they duplicate the claims against CTPD. A suit against a government official in his or her official capacity is synonymous with a claim against the government entity itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436 U.S. at 690 n.55) (stating that suits against officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent"). If a plaintiff asserts claims against both a government entity and the entity's agents in their official capacity, the court should dismiss the official-capacity suits. See Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007); Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006). The claim against Guise in his official capacity duplicates that against CTPD and will be dismissed. Leave to amend will be denied as futile. See Grayson, 293 F.3d at 108.

Cir. 2004).  A right is clearly established if "it would be clear to a reasonable

[official] that his conduct was unlawful in the situation he confronted."  Saucier, 533

U.S. at 202.

In the instant case, White asserts a Fourth Amendment claim for unlawful

search and seizure.  Unlawful search and seizure claims require proof of an

unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a

deprivation of his or her interest in property.  See Soldal v. Cook County, 506 U.S.

56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v.

United States, 394 U.S. 165, 174 (1969)).  Occupants of a hotel room possess a

reasonable expectation of privacy in the contents of the room for the duration of

their stay.  See United States v. Booker, No. Crim. 05-313, 2005 WL 2217023, *4

(D.N.J. Sept. 9, 2005) (citing Hoffa v. United States, 385 U.S. 293, 301 (1966)).  Law

enforcement officials must demonstrate probable cause and obtain a warrant prior

to searching an area in which an individual possesses a reasonable expectation of

privacy unless an exception to the warrant requirement covers the search.  United

States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005).

Here, White alleges that defendant probation officers performed a

warrantless search Room No. 4 during his absence.  (Doc. 1 ¶ IV.1.)  Guise allegedly

performed a similar search and secured the room prior to requesting a warrant.

(Id. ¶ IV.2.)  He then obtained a warrant and performed a search that resulted in the

seizure of contraband.  (Id.)  White has set forth facts reasonably alleging that Guise

searched an area in which White possessed a reasonable expectation of privacy without first obtaining a warrant.[15]

To successfully assert a defense of qualified immunity with respect to these claims, Guise would be required to prove that the aforementioned rights were not "clearly established" at the time of the alleged violations.  See Conn, 526 U.S. at 290. White's complaint is devoid of any allegation about why Guise participated in the searches, what information may have given him probable cause to perform the search, or why he performed a preliminary search to secure Room No. 4 without first obtaining a warrant.  Given the fact-sensitive nature of the constitutional inquiries implicated by this calculus, the court cannot determine at this preliminary stage of the proceeding whether Guise is entitled to qualified immunity with respect

---

[15]Guise asserts that the complaint fails to alleged a Fourth Amendment claim against him because he "got word," presumably from defendant probation officers, that contraband was present in Room No. 4.  (Doc. 1 ¶ IV.2.)  Guise argues that "information received from other law enforcement officials during the course of an investigation is generally presumed to be reliable."  (Doc. 24 at 5.)  He contends that he was entitled to rely on these statements to establish probable cause for his search of Room No. 4, absolving him of constitutional liability.  (Id.)  Despite the generally presumptive reliability of other law enforcement officers' statements, see United States v. Yusuf, 461 F.3d 374, 385 (3d Cir. 2006), White's complaint alleges merely that Guise searched Room No. 4 because he "got word" that it contained contraband.  (Doc. 1 ¶ IV.2.)  The complaint does not state whether Guise acted on information from the defendant probation officers, from a third-party informant, or from some other source.  The complaint lacks sufficient factual allegations from which to ascertain whether Guise acted upon the advice of other law enforcement officers,  whether his action was reasonable based upon the information he received, or whether he was excused from obtaining a warrant prior to securing White's hotel room.  This issue is appropriately reserved for summary judgment after development of a factual record sufficient to apprise the court of the source and content of the information upon which Guise relied.

to White's unlawful search and seizure claim.  Accordingly, the court will deny

Guise's motion to dismiss to the extent that it asserts a qualified immunity defense.

**IV.**   **Conclusion**

White's malicious prosecution, unlawful arrest, and unlawful imprisonment

claims are precluded by <u>Heck v. Humphrey</u>.  The unlawful search and seizure

claims against CTPD and the Probation Office will be dismissed, and White will be

granted leave to file an amended complaint that alleges a policy, practice, or custom

maintained by these municipal defendants that resulted in the alleged

constitutional harm.  Guise's motion to dismiss on qualified immunity grounds will

be denied at this preliminary stage of litigation.[16]

An appropriate order shall issue.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        August 13, 2008

---

[16]Discovery has been stayed pending disposition of the instant motions to dismiss.  (<u>See</u> Doc. 39.)  The court will lift the discovery stay and will issue a revised pretrial and trial schedule that accommodates the parties' right to seek discovery.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY WHITE,** | : | **CIVIL ACTION NO. 1:07-CV-0951** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PROBATION OFFICE,** | : | |
| **CUMBERLAND TOWNSHIP POLICE** | : | |
| **DEPT., ADAMS CO. DISTRICT** | : | |
| **ATTORNEY OFFICE, NATHAN** | : | |
| **FAZENBAKER, ALAN SHIPLEY,** | : | |
| **TIM GUISE, and CHAD SPRANKLE,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

_____AND NOW, this 13th day of August, 2008, upon consideration of the motions

to dismiss (Docs. 19, 23), and for the reasons set for in the accompanying

memorandum, it is hereby ORDERED that:

1. The motion (Doc. 19) of defendants Nathan Fazenbaker, Alan Shipley, Chad Sprankle, Probation Office, and Adams County District Attorney Office is GRANTED in part and DENIED in part as follows:

   a. The motion (Doc. 19) is GRANTED with respect to plaintiff's claims for malicious prosecution, unlawful arrest, and unlawful imprisonment and with respect to all claims against Adams County District Attorney Office.  Leave to amend is denied as futile. See <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

   b. The motion (Doc. 19) is GRANTED with respect to plaintiff's unlawful search and seizure claims against defendant Probation Office.  Plaintiff shall be permitted to file an amended complaint on or before August 29, 2008, that identifies a particular policy, practice, or custom maintained by the Probation Office that resulted in the allegedly unlawful search and seizure.

     c.      The motion (Doc. 19) is DENIED in all other respects.

2.     The motion (Doc. 23) of defendants Tim Guise ("Guise") and the Cumberland County Police Department ("CTPD") is GRANTED in part and DENIED in part as follows:

     a.      The motion (Doc. 23) is GRANTED with respect to plaintiff's claims for malicious prosecution, unlawful arrest, and unlawful imprisonment and with respect to the official capacity claims against Guise.  Leave to amend is denied as futile. See Grayson, 293 F.3d at 108.

     b.      The motion (Doc. 23) is GRANTED with respect to plaintiff's unlawful search and seizure claims against defendant CTPD. Plaintiff shall be permitted to file an amended complaint on or before August 29, 2008, that identifies a particular policy, practice, or custom maintained by CTPD that resulted in the allegedly unlawful search and seizure.

     c.      The motion (Doc. 23) is DENIED in all other respects.

3.     The discovery stay imposed by the order of court dated February 25, 2008 (Doc. 39) is LIFTED.

4.     A revised pre-trial and trial schedule shall issue by future order of court.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge