UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ANTHONY WHITE,                    :    CIVIL NO. **1:07-CV-0951**
                                  :
              Plaintiff           :    (Judge Conner)
                                  :
         v.                       :    (Magistrate Judge Smyser)
                                  :
NATHAN FAZENBAKER,                :
ALAN SHIPLEY,                     :
TIM GUISE and                     :
CHAD SPRANKLE,                    :
                                  :
              Defendants          :


**REPORT AND RECOMMENDATION**


I. Background and Procedural History.


        The plaintiff, a prisoner proceeding *pro se*, commenced

this 42 U.S.C. § 1983 action by filing a complaint on May 24,

2007.  On September 30, 2008, the plaintiff filed an amended

complaint.


        Numerous claims and defendants have been dismissed from

this case. *See Docs. 42 & 79.*  The only remaining claims are 42

U.S.C. § 1983 claims against defendants Fazenbaker, Shipley,

Sprankle and Guise raising purported violations of the Fourth

Amendment with respect to searches of a hotel room and vehicle on March 15, 2006.

On July 29, 2009, defendant Guise filed an answer to the amended complaint, and on July 30, 2009, defendants Fazenbaker, Shipley and Sprankle filed an answer to the amended complaint.

The discovery deadline expired on October 30, 2009. *See Doc. 93.*

The case was referred to Magistrate Judge Blewitt and then to Magistrate Judge Carlson.  Upon Magistrate Judge Carlson's recusal, the case was referred to the undersigned magistrate judge.

In this report and recommendation, we address two motions for summary judgment: a motion (doc. 98) filed by defendants Fazenbaker, Shipley and Sprankle and a motion (doc. 100) filed by defendant Guise.

II.  Summary Judgment Standards.


        Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).


        A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the

trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986). "Only disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a
genuine dispute about a material fact. *Id.* at 248. A dispute
as to an issue of fact is "'genuine' only if a reasonable jury,
considering the evidence presented, could find for the non-
moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d
Cir. 1988). "Where the record taken as a whole could not lead
a rational trier of fact to find for the non-moving party,
there is no 'genuine issue for trial.'" *Matsushita Elec.
Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
"If the evidence is merely colorable . . . or is not
significantly probative . . . summary judgment may be granted."
*Anderson, supra,* 477 U.S. at 249-50. In determining whether a
genuine issue of material fact exists, the court must consider
all evidence in the light most favorable to the non-moving
party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d
Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Undisputed Facts.

The following facts are not in dispute for purposes of the pending summary judgment motions.

On February 28, 2006, Judge Michael A. George of the Court of Common Pleas of Adams County issued a bench warrant for the plaintiff's arrest. *Doc. 99* at ¶3 and *Doc. 113* at ¶3. The warrant was issued based on the plaintiff's failure to appear regarding a violation of his probation. *Id.* and *Doc. 116-2* at 2 (Bench Warrant).

On March 15, 2006, defendants Fazenbaker, Shipley and Sprankle were probation officers with the Adams County Adult Probation Department. *Doc. 99* at ¶¶2 & 5 and *Doc. 113* at ¶¶2 & 5.  On March 15, 2006, defendant Guise was a police officer with the Cumberland Township Police Department. *See Doc. 116-2* at 26.

On March 15, 2006, the plaintiff was on probation. *Doc. 101* at ¶1 and *Doc. 115* at ¶1.  The defendants received information concerning the whereabouts of the plaintiff and

they responded to the Western Inn in Gettysburg. *Doc. 99* at ¶5 and *Doc. 113* at ¶5 and *Doc. 116-2* at 29 & 36. A key was obtained from the Western Inn's attendant and the door to Room 4 of the Western Inn was opened. *Doc. 99* at ¶6 and *Doc. 113* at ¶6. The plaintiff was not in the room. *Id.*

Defendant Shipley searched an area approximately one-half of a mile from the Western Inn, but he was called back to the area of the Western Inn by defendants Sprankle and Fazenbaker who had spotted the plaintiff. *Id.* at ¶16. A foot pursuit of the plaintiff occurred and the plaintiff was eventually taken into custody. *Id.* at ¶17. A search of the plaintiff's person revealed a key to Room 4 of the Western Inn with a "finger scale" attached to the key ring. *Doc. 101* at ¶1 and *Doc. 115* at ¶1. A search of the plaintiff's flight path was conducted immediately after the pursuit and resulted in a finding of crack cocaine. *Doc. 99* at ¶19 and *Doc. 113* at ¶19.

Following the plaintiff's apprehension, defendants Shipley and Sprankle entered Room 4 of the Western Inn using the key that was found in the plaintiff's possession. *Id.* at ¶23 and *Doc. 101* at ¶29 and *Doc. 115* at ¶29. Defendants

Shipley and Sprankle then conducted a search of the room and they found a bag of marijuana. *Doc. 99* at ¶24 and *Doc. 113* at ¶24 ¶24 and *Doc. 101* at ¶29 and *Doc. 115* at ¶29. They stopped the search pursuant to probation office protocol and notified the police. *Doc. 99* at ¶25 and *Doc. 113* at ¶25. Defendant Guise responded and the probation officers informed defendant Guise that they had found suspected marijuana during their search of the room. *Id.* and *Doc. 101* at ¶32 and *Doc. 115* at ¶32.

Defendant Guise ordered the probation officers to secure the room until after he had obtained a search warrant for the room. *Doc. 101* at ¶36 and *Doc. 115* at ¶36. Defendant Guise obtained a search warrant for Room 4 of the Western Inn. *Doc. 99* at ¶26 and *Doc. 113* at ¶26. That search warrant was executed on the same day, March 15, 2006. *Id.*

During the search of the room pursuant to the search warrant, a handgun was found in close proximity to the marijuana that had been found by the probation officers. *Id.* at ¶27. Additionally, a cocaine smoking device and a set of digital scales among other things were found and seized. *Id.* at ¶28.

8

A vehicle that had been parked outside of Room 4 of the Western Inn was also searched. *Id.* at ¶29. The plaintiff had no ownership interest in the vehicle. *Id.* at ¶30 and *Doc. 101* at ¶6 and *Doc. 115* at ¶6. Although the plaintiff had driven the vehicle on the previous day, he had not driven the vehicle on March 15, 2006. *Doc. 99* at ¶31 and *Doc. 113* at ¶31. Consent was obtained from the owner of the vehicle to search the vehicle. *Id.* at ¶33. Crack cocaine was found in the vehicle. *Id.* at ¶34.

Federal charges were brought against the plaintiff, based in part upon the events of March 15, 2006. After a non-jury trial before Judge Rambo, the plaintiff was convicted of possession of a firearm by a convicted felon, possession of a firearm in furtherance of a drug trafficking crime, conspiracy to distribute and possession with intent to distribute crack cocaine and marijuana, distribution and possession with intent to distribute crack cocaine and marijuana and possession of a firearm by an illegal alien. *Doc. 100-5* at 33-46.

IV.   Discussion.


        The plaintiff claims that the three searches of Room 4

of the Western Inn as well as the search of the vehicle parked

outside of that room on March 15, 2006 violated his Fourth

Amendment rights.


        The Fourth Amendment provides:

        The right of the people to be secure in their
        persons, houses, papers, and effects, against
        unreasonable searches and seizures, shall not
        be violated, and no Warrants shall issue, but
        upon probable cause, supported by Oath or
        affirmation, and particularly describing the
        place to be searched, and the persons or things
        to be seized.

U.S. Const. amend. IV.  "The essential purpose of the

proscriptions in the Fourth Amendment is to impose a standard

of "reasonableness" upon the exercise of discretion by

government officials, including law enforcement agents, in

order 'to safeguard the privacy and security of individuals

against arbitrary invasions.'" *Delaware v. Prouse,* 440 U.S.

648, 653-54 (1979)(footnote omitted)(quoting *Marshall v.

Barlow's Inc.,* 436 U.S. 307 (1978)).  "Thus, the permissibility

10

of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654.

A. Searches of Room 4 of the Western Inn.

Defendants Fazenbaker, Shipley and Sprankle contend that the plaintiff did not have a reasonable expectation of privacy in Room 4 of the Western Inn and therefore his Fourth Amendment rights were not violated by the searches of the room.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211 (1986)(quoting *Katz v. United States,* 389 U.S. 347, 360 (1967)(Harlan, J., concurring)). This entails "a two part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Id.*

"[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York,* 445 U.S. 573, (1980)(quoting *United States v. United States District Court,* 407 U.S. 297, 313 (1972)). "Private residences are places in which the individual normally expects privacy free of government intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *United States v. Karo,* 468 U.S. 705, 714 (1984). Of course, "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Rakas v. Illinois*, 439 U.S. 128, 142 (1978). For example, "a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. California,* 376 U.S. 483, 490 (1964). "Occupants of a hotel room possess a reasonable expectation of privacy in the contents of the room for the duration of their stay." *Doc. 42 (Memorandum and Order of August 13, 2008)* at 19. Also, an overnight guest in the home of another has a reasonable expectation of privacy:

> From the overnight guest's perspective, he
> seeks shelter in another's home precisely
> because it provides him with privacy, a place

>
> where he and his possessions will not be
> disturbed by anyone but his host and those his
> host allows inside.  We are at our most
> vulnerable when we are asleep because we cannot
> monitor our own safety or the security of our
> belongings.  Is it for this reason that,
> although we may spend all day in public places,
> when we cannot sleep in our own home we seek
> out another private place to sleep, whether it
> be a hotel room, or the home of a friend.

*Minnesota v. Olson,* 495 U.S. 91, 99 (1990).  While an overnight

guest may claim the protection of the Fourth Amendment, "one

who is merely present with the consent of the householder may

not." *Minnesota v. Carter,* 525 U.S. 83, 90 (1998).

Additionally, a person in a dwelling for a short time for

business purposes does not have a legitimate expectation of

privacy in the dwelling. *United States v. Perez,* 280 F.3d 318,

337 (3d Cir. 2002).


Defendants Fazenbaker, Shipley and Sprankle point to

the plaintiff's deposition testimony to support their

contention that the plaintiff did not have a reasonable

expectation of privacy in Room 4 of the Western Inn.  At his

deposition, that plaintiff testified that he did not personally

rent the room, that it was not his room personally, that the

room was not rented in his name, that he was there "now and

then," that he was "just a visitor,"  that he was "just a

visitor, mainly," that he was not the "owner" of the room,
that he and a 17-year old girl had hung out at the room the
night before with other people and "[o]ther than that, we never
even think about staying at that room," that he had stopped at
the room the night before and then left the room, that he had
nothing to do with the Western Inn on the day of his arrest,
that the last time before his arrest when he was in the room
was the previous night, that he lived in Hanover at the time
and that prior to his arrest he was at a cabin in the general
area of the Western Inn. *Doc. 98-4* at 21, 30, 31, 51, 52, 53 &
67 *(White Dep. at* 20, 29, 30, 50, 51, 52 & 66).

The plaintiff's deposition testimony leads to a
reasonable inference that the plaintiff was nothing more than
an occasional visitor to Room 4 of the Western Inn. As an
occasional visitor, the plaintiff would not have had a
reasonable expectation of privacy in the room. Nevertheless,
there is other evidence in the record that leads to a
reasonable inference that the plaintiff was more than an
occasional visitor to the room. When he was arrested, a key to
Room 4 of the Western Inn was found on the plaintiff. In
connection with the plaintiff's criminal trial, Judge Rambo

14

made a factual finding that other than hotel staff, the plaintiff had the only key to Room 4. *Doc. 98-4* at 101.[1]  Judge Rambo also found that the following objects recovered from Room 4 are attributable to the plaintiff: a traffic citation; letters from Emma Holmes, the plaintiff's girlfriend and mother of his child; and a medical report on the plaintiff's daughter. *Id.*  The facts that the plaintiff had the key to the room and that he kept possessions in the room support an inference that the plaintiff did have a reasonable expectation of privacy in Room 4 of the Western Inn.  Given the conflicting evidence, the question of whether the plaintiff had a reasonable expectation of privacy in the room is a question for the fact finder.

In that we have determined that it can not be ruled as a matter of law that the plaintiff did not have a reasonable expectation of privacy in Room 4 of the Western Inn, we turn to an analysis of each of the searches of Room 4.

---

1.  Judge Rambo also indicated that Room 4 was identified by witnesses as being the plaintiff's residence. *Doc. 98-4* at 101. Judge Rambo, however, did not make a specific factual finding that Room 4 was the plaintiff's residence. *Id.*

### 1. The First Search of Room 4.

The first search of Room 4 occurred when officers obtained a key from the hotel attendant and searched[2] the room for the plaintiff.

#### a. Defendant Guise.

Defendant Guise contends that he is entitled to summary judgment at to the first search of Room 4 because the plaintiff does not have evidence that he was involved in this search. More specifically, defendant Guise contends that the plaintiff does not have any evidence that he was involved in the events in question until after the plaintiff had been arrested and

---

2. The scope of this search is not clear from the summary judgment record. It is not clear whether the officers actually entered the room or whether they merely opened the door and looked inside.

that the only evidence is that he entered the room only after
he obtained a search warrant.

In response, the plaintiff asserts that he received
information that defendant Guise was involved in the first
search of Room 4 from a Ms. Miller who allegedly witnessed the
searches of Room 4.  The plaintiff, however, has not presented
any competent evidence that Ms. Miller witnessed defendant
Guise enter Room 4 when the room was initially opened with the
key obtained from the hotel clerk.  For example, the plaintiff
has not presented a declaration or affidavit from Ms. Miller.
The plaintiff can not testify to what Ms. Miller allegedly told
him as that would be inadmissible hearsay.

The plaintiff has also presented the affidavit that
defendant Guise submitted in support of a criminal complaint
against the plaintiff.  That affidavit provides, in pertinent
part:

> On 03/15/06, CTPD patrols, and Adams County
> Adult Probation were dispatched to the Western
> Inn, 2520 Emmitsburg Road, Cumberland Township,
> Adams County, PA., relative to a wanted

subject. Upon arrival the affiant met with
Cecil Gulden in the office area of the Western
Inn. Gulden relayed the following information.
Gulden's daughter, (BG), a 17 year old minor,
had not returned to her residence the prior
night. Gulden had received information that
(BG) was at the Western Inn, specifically in
room #4. Additionally, Gulden indicated that
he had received several phone calls from (BG).
Gulden's caller ID feature indicated the calls
were coming from the Western Inn. Gulden
traveled to the Western Inn and made contact
with the occupants of Room #4. Gulden
indicated a white female had answered the door
and indicated that (BG) was no longer in the
room. Gulden questioned who else was at, or
had been at, the room. The subject indicated
the DEFENDANT had been, or was at, the room.
Gulden inspected the parking area of the motel,
and found the vehicle (BG) had been operating.
Gulden further indicated that the DEFENDANT was
also known to drive the vehicle. The affiant
and other officers attempted contact at room #4
but found the room to be vacant of persons.
Responding patrols cleared the immediate area.

*Doc. 116-2* at 36. This affidavit by defendant Guise supports

an inference that defendant Guise was involved in the events

surrounding the first search. The affidavit states that the

affiant (defendant Guise) and other officer attempted contact

at room 4 but found the room vacant of persons. The affidavit,

however, does not support a reasonable inference that defendant

Guise actually opened the door to Room 4 or entered the room during the first search.

The plaintiff also contends that testimony from his preliminary hearing supports his contention that defendant Guise participated in the first search of Room 4. The plaintiff, however, has not presented the transcript of the preliminary hearing to support that assertion. The plaintiff has submitted what appears to be the hand written notes of his attorney from the preliminary hearing. However, such notes are hearsay and not competent summary judgment evidence.

The plaintiff also points to the affidavit of probable cause submitted by defendant Guise in support of his application for a search warrant to search Room 4 of the Western Inn on March 15, 2006. *Doc. 116-2* at 29. However, nothing in that affidavit supports an inference that defendant Guise opened the door to Room 4 or entered the room before he obtained the search warrant.

The plaintiff has not presented evidence from which a reasonable trier of fact could find that defendant Guise opened the door to Room 4 or entered Room 4 during the first search. Accordingly, defendant Guise is entitled to summary judgment as to the first search of Room 4.

b.  Defendants Fazenbaker, Shipley and Sprankle.

Defendants Fazenbaker, Shipley and Sprankle contend that they are entitled to summary judgment with respect to the first search of Room 4 because they had a warrant for the plaintiff's arrest.

An arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York,* 445 U.S. 573, 603 (1980).  "*Payton* requires that officers have 'a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry.'" *United States v. Veal*, 453 F.3d 164, (3d Cir.

2006)(quoting *United States v. Gay,* 240 F.3d 1222, 1226 (10th

Cir. 2001.)).

Defendants Fazenbaker, Shipley and Sprankle assert that

they received information that the plaintiff was at Room 4 of

the Western Inn. Defendant Fazenbaker, Shipley and Sprankle do

not set forth what information they had received that the

plaintiff resided in or was in Room 4 of the Western Inn.

Because we can not say as a matter of law on this record that

defendants Fazenbaker, Shipley and Sprankle had a reasonable

belief before the first search that the plaintiff was residing

in Room 4 and was present in Room 4, defendants Fazenbaker,

Shipley and Sprankle are not entitled to summary judgment as to

the first search of Room 4.

2. The Second Search of Room 4.

The second search of Room 4 occurred after the plaintiff's arrest when defendants Shipley and Sprankle used the key that they had found on the plaintiff to open Room 4 and then search the room.

The plaintiff has not presented evidence from which a reasonable factfinder could conclude that defendant Guise participated in the second search of Room 4. Accordingly, defendant Guise is entitled to summary judgment as to the second search of Room 4.

Defendants Fazenbaker, Shipley and Sprankle contend that the second search of Room 4 did not violate the Fourth Amendment because after the plaintiff's arrest they had reasonable suspicion to believe that the search would reveal additional probation violations.

Pursuant to Pennsylvania law a county probation officer may *inter alia* conduct a search of property "if there is reasonable suspicion to believe that the real or other property

in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 P.S. 331.27b(d) (repealed effective Oct. 13, 2009 and replaced by 42 Pa.C.S.A. § 9912). No more than reasonable suspicion is required to search a probationer's residence. *United States v. Knights,* 534 U.S. 112, 121 (2001).

In the instant case, the search of the plaintiff when he was arrested yielded a key to Room 4 of the Western Inn with a "finger scale" attached to the key ring.  A search of the plaintiff's flight path was conducted immediately after the plaintiff's arrest and resulted in a finding of crack cocaine. Given the finding of the room key and drugs as a result of the plaintiff's arrest, defendants Fazenbaker, Shipley and Sprankle had reasonable suspicion to believe that a search of Room 4 would reveal further evidence of probation violations by the plaintiff.  Accordingly, defendants Fazenbaker, Shipley and

Sprankle are entitled to summary judgment as to the second search of Room 4.[3]

### 3. The Third Search of Room 4.

The third search of Room 4 occurred after defendant Guise obtained a search warrant to search the room. Since this search was conducted pursuant to a facially valid warrant, a reasonable trier of fact could not conclude that this search violated the plaintiff's rights. Accordingly, the defendants are entitled to summary judgment as to this search.

### B. Search of the Vehicle.

The plaintiff is challenging the search of the vehicle that was parked outside of Room 4 of the Western Inn on March 15, 2006. The plaintiff, however, has not presented evidence

---

3. Because we conclude that defendants Fazenbaker, Shipley and Sprankle are entitled to summary judgment as to the second search because they had reasonable suspicion to conduct the search, we do not address defendants Fazenbaker, Shipley and Sprankle's argument that they are entitled to qualified immunity as to the second search.

from which a reasonable trier of fact could conclude that any of the named defendants searched the vehicle. The record evidence indicates that another officer not named as a defendant in this case actually performed the search of the vehicle. Moreover, it is undisputed that the plaintiff did not own the vehicle and that he was not in possession of or operating the vehicle at or near the time of the search. Accordingly, the plaintiff did not have a reasonable expectation of privacy in the vehicle. Additionally, it is undisputed that the owner of the vehicle gave consent to search the vehicle. Accordingly, for these reasons the defendants are entitled to summary judgment as to the search of the vehicle.

V. Recommendations.

Based on the foregoing, it is recommended that the motion (doc. 100) for summary judgment filed by defendant Guise be granted and that defendant Guise be granted summary judgment as to the remainder of the plaintiff's claims. It is further recommended that the motion (doc. 98) for summary judgment

filed by defendants Fazenbaker, Shipley and Sprankle be granted in part and denied in part.  It is recommended that defendants Fazenbaker, Shipley and Sprankle not be granted summary judgment as to the first search of Room 4 of the Western Inn but that they be granted summary judgment as to the remainder of the plaintiff's claims.  It is further recommended that the case be listed for trial as to the remaining claim - the claim against defendants Fazenbaker, Shipley and Sprankle with respect to the first search of Room 4 of the Western Inn.


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge


Dated:  July 28, 2010.